## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ANNE ARMSTRONG and
ALAN GORDON,
            Plaintiffs,

            v.                              C.A. No. 15-215-ML

Honorable SALLY JEWELL,
in her capacity as United States
Secretary of the Interior,

JONATHAN B. JARVIS,
in his capacity as Director
of the United States National
Park Service, and

JENNIFER SMITH,
in her capacity as Site Manager for
ROGER WILLIAMS NATIONAL PARK,
            Defendants.

### ORDER AND MEMORANDUM

The plaintiffs in this *pro se* action seek to conduct certain religious ceremonies — which include the "sacramental use and distribution" of cannabis, or marijuana — on the grounds of Rhode Island's only federal park. Revised Application for Special Use Permit (Dkt. No. 1-2 at Page 1 of 48). The matter before the Court is the government's motion to dismiss the Complaint. For the reasons that follow, the government's motion is GRANTED.

### I.   Factual Background

Anne Armstrong ("Armstrong") and Alan Gordon ("Gordon," together with Armstrong, the "Plaintiffs") are members of "The Healing Church," which they describe as "new and barely

1

corporate." Complaint at ¶ 5. According to the Plaintiffs, the Healing Church is "a Cannabist Faith," which involves the use of marijuana during religious services. The current litigation was initiated by the Plaintiffs to enable them to conduct such services at the Roger Williams National Memorial (the "National Memorial"), which is a four-acre site in the United States National Park Service system and, thus, located on federal land.

On March 25, 2015, Armstrong submitted an application for a special use permit, requesting to conduct a prayer service on May 23, 2015 at the National Memorial, to "include the sacramental use and distribution of KNH BSM [Hebrew lettering] [cannabissativa]..." Exhibit 1 to Complaint (Dkt. No. 1-2). The requested location for the event is only described as "Roger Williams National Memorial," making no mention of a particular location within the park.[1] Id. For the question "Is this an exercise of First Amendment Rights?" Armstrong checked "Yes." Id. at Page 2 of 48.

On April 22, 2015, National Memorial Site Manager Jennifer Smith ("Smith") advised Armstrong and Gordon that she had mailed their permit and she requested that they review the material,

---

[1]

Although Armstrong states in her affidavit attached to the Complaint that she applied to hold a worship service "at the site of the Well of the Promise and the Prophesy," Armstrong Affidavit ¶ 12 (Dkt. No. 1-1), no such specification is included in the permit application.

2

sign the permit, and mail it back to her. Exhibit 3 to Complaint (Dkt. No. 1-2, Page 5 of 48). Smith's cover letter notes that "this permit does not grant permission to undertake any activity that may violate Federal, State, or municipal laws or regulations," including the "Controlled Substances Act, the laws of the State of Rhode Island governing the possession and use of controlled substances, and 36 C.F.R. § 2.35[2], which prohibits the illegal possession or delivery of controlled substances within the National Park System." Exhibit 2 (Dkt. No. 1-2) at Page 32 of 48.

The permit itself states that its issuance "is subject to the attached conditions" and that "the undersigned hereby accepts this permit subject to the terms, covenants, obligations, and reservations, expressed or implied herein." Id. at Page 3 of 48. The attached conditions specify that the permittee "shall comply

---

[2]

 Pursuant to 36 C.F.R. § 2.35 (b), which relates to controlled substances, the following are prohibited:

(1) The delivery of a controlled substance, except when distribution is made by a practitioner in accordance with applicable law. For the purposes of this paragraph, delivery means the actual, attempted or constructive transfer of a controlled substance whether or not there exists an agency relationship.

(2) The possession of a controlled substance, unless such substance was obtained by the possessor directly, or pursuant to a valid prescription or order, from a practitioner acting in the course of professional practice or otherwise allowed by Federal or State law. 36 C.F.R. § 2.35 (a) and (b).

with all applicable Federal, State, county and municipal laws, ordinances, regulations, codes, and the terms and conditions of this permit." Id. at Page 35 of 48.

On April 23, 2015, Armstrong sent an e-mail[3] to Smith, requesting a number of changes. _Inter alia_, Armstrong asked Smith to amend the cover letter "to make it explicitly clear that no law enacted by Congress or any other agency of the State abridges our right to worship according to our interpretation of the scripture." Armstrong added that "[i]t would help if you could also make clear that your Park Police will protect our First Amendment rights against encroachment by any other agencies." Id. at Page 6 of 48.

In response, Smith acknowledged receiving Armstrong's requests and noted that "none of the requests noted in your email dated April 23 would seem to require any changes to the language of the permit." Id. at Page 37 of 48. Armstrong signed the special use permit on May 4, 2015. Id. at Page 3 of 48.

According to the Complaint, Armstrong and Gordon began

---

[3]

The e-mail correspondence Armstrong and Gordon submitted as exhibits attached to the Complaint appears to have been edited, _e.g.,_ by the addition of titles and subheadings. (Dkt. No. 2-1 Pages 5-48). The attachments also include the April 22, 2015 cover letter from Smith, the completed and signed application for the use permit, and a portion of the use permit itself.

4

daily[4] gatherings at the "Well site" of the Memorial on Saturday, May 16, 2015. Complaint ¶ 12. Armstrong and Gordon returned the following day and "again prayed with cannabis," but were advised by a park ranger and, later, two Providence police officers, that cannabis was not allowed. Complaint ¶ 13. On May 18, 2015, Armstrong and Gordon encountered a federal law enforcement officer[5] who asked them for identification and, according to the Plaintiffs, tried to write a warning for the possession of cannabis. Complaint ¶ 14. On Tuesday, May 19, 2015, several police vehicles were at the National Memorial. According to the Complaint, Armstrong and Gordon were "issued a summons for federal Magistrate's Court...indicating that a fine of over $100 was due."[6] They were then instructed to leave the park. Complaint

---

[4]

The gatherings took place between 4:20 - 5:20 (apparently in the afternoon) and were "scheduled to allow 9-5 workers to visit." Complaint ¶ 12 (Dkt. No. 1).

[5]

According to the Defendants, this was likely a member of NPS personnel. Defs.' Mot. Dismiss at 5 (Dkt. No. 11).

[6]

As explained by the Defendants, the Plaintiffs received Central Violations Bureau notices pursuant to 36 C.F.R § 2.35, which prohibits the "possession of a controlled substance [within federal park areas], unless such substance was obtained by the possessor directly, or pursuant to a valid prescription or order, from a practitioner acting in the course of professional practice or otherwise allowed by Federal or State law." 36 C.F.R. § 2.35(b)(2).

¶ 15. The Plaintiffs, together with another individual, returned to the National Memorial on May 20th, 2015, where they used cannabis while being observed by police officers. No one was arrested. Complaint ¶ 16.

## II. Procedural History

On May 21, 2015, Armstrong and Gordon filed a twenty-page pro se "Complaint and Application for Urgent Injunction" (Dkt. No. 1), together with a motion for leave to proceed *in forma pauperis* (Dkt. No. 2). The Plaintiffs sought injunctive relief to preclude governmental interference with their planned "cannabis-related religious activity" at the National Memorial, specifically for the scheduled May 23, 2015 event. On May 22, 2015, the government filed an objection to the Plaintiffs' application, on the ground that the Plaintiffs had failed to demonstrate a substantial likelihood of success on the merits of their claim under the Religious Freedom Restoration Act of 1993 ("RFRA") (Dkt. No. 3). After the Magistrate Judge recommended that Gordon's IFP motion be denied, see Report and Recommendation (Dkt. Nos. 4, 5), the required filing fee was paid.

On May 22, 2015, this Court issued a Memorandum and Order, treating the Plaintiffs' application for "urgent injunction" as a motion for a temporary restraining order ("TRO"). In light of the Plaintiffs' *pro se* status, the Court read their submitted

pleadings liberally (Dkt. No. 10). After considering the Plaintiffs' submissions and the government's response, the Court concluded that the Plaintiffs had not met their burden of demonstrating a likelihood of success on the merits. The Court denied the motion for TRO. <u>Id.</u>

On July 20, 2015, the government filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Dkt. No. 11). Between July 31, 2015 and August 7, 2015, the Plaintiffs filed (1) an amended affidavit to the Complaint (Dkt. No. 12), (2) a response in opposition to the government's motion (Dkt. No. 13), (3) a motion for default judgment (Dkt. No. 14), and (4) the affidavit of Gordon (Dkt. No. 15), together with 14 new exhibits (Dkt. Nos. 16-1 through 17-6). In response, the government filed an objection to Plaintiffs' motion for default judgment (Dkt. No. 18), and a reply in support of the government's motion to dismiss (Dkt. No. 19). The Plaintiffs filed a motion for leave to amend their objection to the motion to dismiss (Dkt. Nos. 20, 21), as well as a reply to the government's objection to the Plaintiffs' motion for default judgment (Dkt. No. 22).

On August 18, 2015, the Court conducted a hearing on the various motions. With the consent of the government, the motion for leave to amend the Plaintiffs' objection to the government's

7

motion to dismiss was treated as an amendment to the Complaint and, as such, the motion was granted. The Plaintiffs' motion for default judgment was denied. After both sides were given an opportunity to argue in support of their respective positions, the Court took the government's motion to dismiss the Complaint under advisement.

## III. Standard of Review

A motion to dismiss for failure to state a claim upon which relief may be granted is governed by Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss a complaint the Court "must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts as true, and giving the Plaintiff the benefit of all reasonable inferences. Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002). In order to withstand a motion to dismiss, a claim "must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012. The complaining party must include "factual content that allows the court to draw a reasonable inference" in the pleader's favor. Id. "If, under any theory, the allegations are sufficient to state a cause of action in accordance with the law," the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir.1994). The Court ignores, however,

"statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action-elements." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012).

Although the Court generally may not consider documents outside of the complaint unless it converts the motion to dismiss into one for summary judgment, it may make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.[7]" <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).

Generally, *pro se* plaintiffs' pleadings are held to less stringent standards than those of lawyers, <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, the First Circuit has "required even *pro se* plaintiffs to plead specific facts backing up their claims of civil rights violations." <u>Glaros v. Perse</u>, 628 F.2d 679, 684 (1st Cir.1980).

---

[7]   The Court notes that the Plaintiffs attached to their 20-page Complaint (Dkt. No. 1) a 9-page affidavit of Armstrong (Dkt. No. 1-1) and a 48-page exhibit (Dkt. No. 1-2), which included a copy of the Application for Special Use Permit, a portion of the Use Permit, and various pieces of reformatted correspondence regarding the planned event at the National Memorial. An additional 4-page affidavit of Armstrong (Dkt. No. 21) makes reference to the well (a dry spring) that is located on the National Memorial grounds.

IV.  **The Parties' Positions**

The government contends that the Complaint fails to allege that smoking marijuana at the National Memorial is a sincere exercise of the Plaintiffs' religion, and that it fails to assert that the National Park Service's prohibition of such conduct significantly restricts the Plaintiffs' religious exercise. According to the government, the Plaintiffs, at most, have alleged an inconvenience rather than a substantial burden on their religion. However, even if the imposition of a substantial burden on the Plaintiffs' religion were to be assumed, the government asserts that the National Park Service has a compelling interest in prohibiting the Plaintiffs and any potential followers from distributing and smoking marijuana in a small federal park located in an urban area.

At the August 18, 2015 hearing on the government's motion to dismiss the Complaint, the government stated that it did not challenge the Plaintiffs' general assertion that smoking marijuana was a part of their religious practice. The government also pointed out that the Plaintiffs, by their own statements, had been practicing their asserted religion for at least a period of some months, without ever expressing a need to smoke marijuana at the National Memorial. As such, the National Park Service regulation which prohibits the possession and use of marijuana on

public land, thus precluding the Plaintiffs from smoking marijuana on federal property in downtown Providence, did not constitute a substantial burden on the exercise of the Plaintiffs' religion.

The government also noted that, although there have been cases in which the use of certain controlled substances by a narrowly defined group of individuals was permitted under very controlled circumstances, in the instant case, there was a risk that such substances would be diverted, or distributed, to other individuals. The National Park Service only granted the Plaintiffs permission to conduct their religious service subject to existing federal and state law. Finally, the government suggests that, given the urban location of the National Memorial, which is freely accessible to the public, a prohibition against smoking marijuana in the course of the Plaintiffs' services conducted at the National Memorial provided the least restrictive means possible.

The Plaintiffs, on their part, maintain that their "authentic, sincere religious exercise, or practice, has been substantially burdened" by the government. Complaint ¶ 21. The Plaintiffs also state that the government acted without a compelling interest and that the government's "intimidatory and oppressive tactics are not the least restrictive means of

achieving" the government's asserted compelling interest. Complaint ¶ 22-23.

At the hearing, the Plaintiffs[8] stated that "we felt that in the application process we refer to all of that site is holy to us, but in particular there was reference to prayer at a well that we consider sacred because of scripture and our own personal beliefs." Upon question by the Court, Gordon explained that the proposed prayer service described in the application included the use by, and distribution of marijuana to, "those people that we know to be able to handle it."

## V.    Claims under the RFRA

With enactment of the RFRA, "Congress created a cause of action for persons whose exercise of religion is substantially burdened by a government action, regardless of whether the burden results from a neutral law of general applicability." <u>Navajo Nation v. U.S. Forest Serv.</u>, 535 F.3d 1058, 1068 (9th Cir. 2008). The RFRA provides that the

> "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." § 2000bb-1(a).

> Subsection (b) provides that the

> [g]overnment may substantially burden a person's

---

[8]     The bulk of the argument was presented by Gordon and then adopted and supplemented by Armstrong.

exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(b).

In order to state a *prima facie* claim under the RFRA, the Plaintiffs must establish that the application of federal law in this case would substantially burden a sincere religious exercise. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed. 1017 (2006); 42 U.S.C. §2000bb-1(a). United States v. Rush, 738 F.2d 497, 512 (1st Cir. 1984)("When a law is challenged as interfering with religious conduct, the constitutional inquiry involves three questions: (a) whether the challenged law interferes with free exercise of a religion; (b) whether the challenged law is essential to accomplish an overriding governmental objective; and (c) whether accommodating the religious practice would unduly interfere with fulfillment of the governmental interest") (citing United States v. Lee, 455 U.S. 252, 256-59, 102 S.Ct. 1051, 1054-56, 71 L.Ed.2d 127 (1982)).

Only if the Plaintiffs establish that the consumption and distribution of marijuana in a small urban park on federal land constitutes a sincere religious exercise, does the burden shift

to the government to show that (1) enforcement of the federal prohibition against using and distributing marijuana on federal land is in furtherance of a compelling governmental interest, and (2) the application of such laws is the least restrictive means of advancing such interest. Id.; §2000bb-1(b).

Conduct which is claimed to be an "exercise of religion" must be based on "a religious belief rather than a philosophy or way of life" and the belief must be "sincerely held" by the Plaintiffs. United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996). The RFRA defines the "exercise of religion" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4); 42 U.S.C. § 2000cc-5(7)(A).

Although the RFRA does not contain a specific definition of what consists a "substantial burden" on the exercise of religion, case law indicates that a "substantial burden" is imposed only "when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit... or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions..." Navajo Nation v. U.S. Forest Serv., 535 F.3d at 1070 (discussing the Supreme Court's decision in Sherbert v. Verner, 374 U.S. at 399, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)(Seventh-day Adventist's employment was

14

terminated for refusing to work on Saturday, her faith's day of rest) and Yoder v. Wisconsin, 406 U.S. at 207-08, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)(Members of Amish religion convicted for violating state law requiring their children to attend school until age sixteen). Anything less does not constitute a "substantial burden" on religious exercise and does not require the application of the compelling interest test set forth in Sherbert and Yoder. Navajo Nation v. U.S. Forest Serv., 535 F.3d at 1070.

As to the question of the government's "compelling interest", the First Circuit has accepted the "congressional determination that marijuana in fact poses a real threat to individual health and social welfare." United States v. Rush, 738 F.2d 512 (listing cases from other jurisdictions); United States v. Israel, 317 F.3d 768, 771 (7th Cir. 2003)(noting that "Congress' inclusion of marijuana as a Schedule I controlled substance" reflects the belief that marijuana is a "serious threat to the public health and safety").

To establish that the government employed the least restrictive means in advancing a compelling government interest, the government is required to establish that no alternative, less restrictive, means exists. Sherbert, 374 U.S. at 407. See Burwell v. Hobby Lobby Stores, Inc., __U.S.__, 134 S.Ct. 2751, 189 L.Ed.

2d 675 (2014)(requiring government to show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion on the objecting parties"). Recognizing the difficulty of proving a negative, courts that have addressed this issue have held that "the government should not be required 'to refute every conceivable option in order to satisfy the least restrictive means prong of RFRA.'" United States v. Wilgus, 638 F.3d 1274, 1289 (10th Cir. 2011) (listing concurring cases from other jurisdictions); United States v. Lafley, 656 F.3d 936, 942 (9th Cir. 2011)(rejecting alternative restrictive means that would be "as impractical as they are insufficient"); Olsen v. Drug Enforcement Agency, 878 F.2d 1458 (D.C.C. 1989)(rejecting proposal for restrictive use of marijuana during religious services, which required "burdensome and constant official supervision and management").

## VI. This Case

The government, for purposes of its motion to dismiss the Complaint, "presume[s] the Plaintiffs' general assertion that the use of marijuana is an exercise of their religion."[9] The

---

[9] The Court notes that, according to his affidavit, Gordon began using marijuana at age 13 for non-religious reasons and did not become a "Canon to the Healing Church" until March 2015. Gordon Affidavit ¶¶ 1, 2 (Dkt. No. 15). According to Armstrong's affidavit, she began to use cannabis in 2011 for medicinal purposes. Armstrong explained further that "[a]s I began to use cannabis, I became aware of a 'quickening' in my faith, and an

government asserts, however, that the Complaint fails to allege that marijuana use and distribution <u>at the National Memorial</u> is a component of the Plaintiffs' religion. Defs.' Mot. Dismiss at 9 (Dkt. No. 11)(emphasis added). A review of the Complaint and the extensive attachments thereto gives no indication that the exercise of Plaintiffs' religion is bound specifically to the National Memorial. Although the Plaintiffs repeatedly assert that the religious use of marijuana, or cannabis, is "deeply held, demonstrably sincere, and exquisitely supported by the standard Bible," there is simply no mention of the specific location where such religious use must occur. Rather, the Plaintiffs merely assert in their Complaint that the National Memorial, "the Birthplace of US Religous Freedom," is a "place sacred to the Plaintiffs." Complaint ¶ 4. They further assert that "the relevant time and location, in which the complained of events took place, was preordained by the ancient phrase 'I.N.R.I',[10] in part a result of ancient prophetic visions of the very spot and

awareness of the sacred nature of the plant that was helping me to heal." Armstrong Affidavit ¶ 6 (Dkt. No. 1-1)

[10]

In support of this particular contention, Gordon states that the inscription "INRI" on Jesus's cross, as seen by Pontius Pilate's wife in a dream, refers to "in R.I.;" that the well at the National Memorial was donated by the "Hahn" family, whose family name is another word for "hemp;" and that an early 17th Century land sale deed was signed by Roger Williams and the Native mystic Canonicus, whose name means "Hempstaff" in Latin.  Gordon Affidavit, ¶¶ 9 L, P.

the very time." Complaint ¶ 5 B.

In sum, based on the allegations of the Complaint, The Healing Church established by the Plaintiffs, while it involves the religious use of marijuana, is not bound to the location at the National Memorial. According to the Plaintiffs, their beliefs have "minor variations," and the Church is "new and barely corporate." Complaint ¶ 5. Even assuming that the Plaintiffs' belief system requires the use of marijuana as part of their religious exercise, there is no indication that such use may be conducted <u>only</u> at the National Memorial. In their supporting affidavits, both Plaintiffs acknowledge that they have used marijuana as part of their religious exercise for years — both Armstrong and Gordon also expressly state that they have used marijuana for other reasons and for a number of years prior to incorporating the use of it in their religious belief systems. Neither of them alleges, however, that their religious practices have included religious services at the National Memorial before May 2015 or that they are unable to engage in their religious practices in another location.

Although Armstrong alleges in her affidavit that she "applied for a permit for a prayer and worship service to be held at the site of the Well of the Promise and the Prophesy" located at the National Memorial, Armstrong Affidavit ¶ 12 (Dkt. No. 1-

18

1), the application she submitted to the Park Service only specifies "Roger Williams Memorial Park" as the "Requested Location." Permit Application at 1 (Dkt. No. 1-2). In the correspondence attached to the Complaint, Smith reminded Armstrong and Gordon that "your event will take place, as stated in the permit and shown on the map that was attached to the permit, in the small grass amphitheater just south of the parking lot." Exhibit B to Complaint at Page 39 of 48 (Dkt. No. 1-2). On her part, Armstrong acknowledged that "[w]e intend to bless the spring at the well first, prior to proceeding to the grassy area for our service and sharing, but we can conduct this <u>preliminary rite</u> with just a few acolytes." <u>Id.</u> at Page 40 of 48 (emphasis added). In sum, neither the permit application, nor the correspondence related to the planned event supports the Plaintiffs' more recent contention that the well is central to their religious beliefs or ceremonies.

Although the government's motion is persuasive on that point alone, the Court need not rely solely on a determination whether the use and dispersion of marijuana at the National Memorial is part of the Plaintiffs' sincerely held beliefs. Even if the Court, as it must at this stage of the litigation, indulges the Plaintiffs' representations and takes as true that the location of their religious exercise is of significant importance to the

19

Plaintiffs, their claims cannot withstand the Defendants' motion.

The Plaintiffs allege in their Complaint that their **"authentic, sincere religious exercise, or practice, has been substantially burdened,"** Complaint ¶ 21 (emphasis in original); however, they offer no further explanation or factual support for this contention. As asserted in Armstrong's affidavit, it was essential to The Healing Church to conduct a prayer and worship service on May 23, 2015, "on both Erev Shavuot and the Vigil of Pentecost, and in a year dedicated to Mercy by the barefoot Apostle, according to the prophets among us." Armstrong Affidavit ¶ 12 (Dkt. No. 1-1). There is no allegation, however, that the service on that day could not have been conducted outside of the National Memorial, where the Plaintiffs' use of marijuana would not have been subject to the prohibitions of 36 C.F.R. § 2.35. The Plaintiffs' choice of location for the service is supported only by the suggestion that the location "was preordained by the ancient phrase 'I.N.R.I.'" and a general statement that the National Memorial is "a site devoted to the celebration of religious freedom." Complaint at 5 B., 8. Nothing in the Plaintiffs' pleadings indicates that they would have been precluded from conducting their service (including the use and distribution of marijuana) at a different location; they were simply prohibited from conducting it on the four-acre grounds of

20

Rhode Island's only national park.[11]

In sum, the only encumbrance on the Plaintiffs' exercise of their religious practices was the unavailability of a location which did not appear to be central to their general religious beliefs or practices. Since they were free to conduct their services elsewhere, the prohibition did not require them to abandon their religious principles.

Moreover, even if the Court were to consider the prohibition against the Plaintiffs' use of marijuana a substantial burden on their religious exercise, their claims would fail at the final prong of the analysis. In their permit application, the Plaintiffs state that they expected up to 100 participants at their service.  They also indicated their intent to use and distribute marijuana to those participants. The National Memorial is a small park in downtown Providence, which is unfenced, open to any member of the public, and located within a short walking distance from several university buildings, including a large student dormitory, restaurants, and the Providence train station. During the planned event, the National Memorial would have remained open to the public to use or walk through the park. Upon

---

[11]
    It is undisputed that the Plaintiffs were permitted to conduct their prayer and worship service at the National Memorial, as long as they adhered to existing federal laws, which would have prohibited them from using and distributing marijuana during such service.

question by the Court, Gordon clarified that the Plaintiffs intended to share marijuana as part of their prayer service, with "those people that we know to be able to handle it," a determination that would have been made by Gordon.

The government's assertion of a compelling interest to enforce existing laws prohibiting the distribution of a Schedule I substance on federal land is not refuted by the Plaintiffs' reliance on <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed. 1017 (2006). In <u>O Centro Espirita</u>, the Supreme Court determined that the government had failed to demonstrate a compelling interest in barring a religious sect's sacramental use of hoasca, a tea containing hallucinogens. Both the nature of hoasca and the circumstances under which it was to be consumed can be distinguished from the instant case. Unlike marijuana, which is readily available and has a widespread use as a recreational drug, hoasca is rare and its intended use in <u>O Centro Espirita</u> was expressly limited to private religious ceremonies. Likewise, the use of peyote for religious ceremonies by members of the Native American Church, <u>see</u> <u>Olsen v. Drug Enforcement Administration</u>, 878 F.2d 1458 (D.C. Cir. 1989) is distinguishable from the instant case. Both <u>O Centro Espirita</u> and <u>Olsen</u> acknowledge the overwhelming difference between marijuana—a

Schedule 1 controlled substance which is associated with actual abuse and wide availability—and other substances, which are used by religious organizations in tightly circumscribed ceremonies.

As to the means the government is using to advance its compelling interest, the circumstances of this particular case make clear that there are no feasible, practical alternatives to prohibiting the use and distribution of marijuana at the National Memorial. The Plaintiffs were allowed to hold their prayer service at the site, subject to existing laws; they were informed accordingly when the permit was issued; and by Armstrong's signature on the permit she acknowledged those limitations. Given the central location of the park in downtown Providence and its proximity to student housing and other establishments, the open access to the park by any member of the public, and the stated intent by the Plaintiffs to distribute marijuana during their service to anyone the Plaintiffs deemed "able to handle it," the Court finds that the Defendants allowing the Plaintiffs to conduct their service without the use or distribution of marijuana constituted the least restrictive means of advancing the government's compelling interest.

The Plaintiffs candidly state in their Complaint that they believe in a "Biblical duty to break both Biblical and modern cannabis restriction statutes when the restrictions suppress

cannabis use in good faith." Complaint ¶ 5 A. Armstrong and Gordon, who acknowledge that they have been using marijuana for years for nonreligious reasons, now seek to challenge federal laws prohibiting them to use and distribute marijuana on federal land by asserting a right to religious freedom under the RFRA. However, the allegations in their Complaint, together with the attached documentation, do not establish that the use and distribution of marijuana at the National Memorial is a part of their asserted religious beliefs or that the limitation of the permit (which allows them to conduct a prayer service, subject to existing federal and state laws and regulations) constitutes a substantial burden on their religious exercise. Accordingly, the Plaintiffs' assertion in their pleadings are insufficient to withstand the government's motion to dismiss the Complaint. Moreover, the government, on its part, has met its burden to assert a compelling interest in preventing the use and distribution of marijuana at the National Memorial and to establish that it has used the least restrictive means to achieve that interest.

## Conclusion

For the reasons stated herein, the government's motion to dismiss the Complaint is GRANTED and the Complaint is DISMISSED.

24

The Clerk is directed to order judgment for the Defendants.

SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi
Senior United States District Judge
December 7, 2015